**In the Matter of the FEE AGREEMENT OF Hugh D. COX IN CASE NUMBER 91–326.**

**No. 95–1033.**

United States Court of Veterans Appeals.

March 31, 1998.

Hugh D. Cox, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Adrienne Koerber, Deputy Assistant General Counsel, Washington, DC, were on brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and GREENE, Judges.

NEBEKER, Chief Judge:

Hugh D. Cox, Esq., appeals an August 8, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which found him not entitled to attorney fees from past-due benefits awarded to a veteran, Parish Howard, for services rendered before the Department of Veterans Affairs (VA) and this Court. Upon consideration of the parties' briefs and the record on appeal, the Court will vacate the Board's decision, and remand the matter for the following reasons.

## I. FACTS

The veteran had active duty military service from May 1956 to May 1959. *See* Record (R.) at 7, 184. The veteran filed a claim for an increased rating for his service-connected bilateral pes planus in November 1989, stating, "I am having a hard time trying to work a 40-hours work week[,] I won't be able to hold out this way much longer." R. at 24. In June 1990, a VA regional office (RO) denied an increased rating, and affirmed the prior rating of 30% for bilateral pes planus. R. at 26–27. In his Notice of Disagreement (NOD) to the Board, the veteran specifically noted that he was "not even working" and that his foot condition had severely worsened. R. at 31. A Statement of the Case was forwarded which did not reference his complaint of being unable to work. R. at 36–37. The veteran responded by filing a VA Form 1–9, Appeal to the Board of Veterans' Appeals, in which he stated, "I can't even hold a full time job because of my disability. I haven't work[ed] since 3/3/90. I can't even hold a full time job.... I had to quit my job 3/3/90. I am unable to work [a] 40 hours work week." R. at 39–41. A BVA decision of December 13, 1990, ignored his claims of difficulty working, and affirmed the previous 30% rating for bilateral pes planus. R. at 48–52.

In February 1991, the veteran entered into a contract with attorney Hugh Cox (R. at 80), and soon thereafter filed a Notice of Appeal with this Court (R. at 74). As part of a motion for reconsideration before the Board, the veteran submitted the following statement:

> I am unable to do any kind of work.... I am unable to earn any kind of money from work. Because of my service connected disability my type of work is limited work and it call[s] for a lot of walking. And I am unable to do a lot of walking or standing. So I am unable to support my family because of my disability.

R. at 122. On May 29, 1991, the veteran was diagnosed with "probable organic mental disorder," and "depressive disorder" as part of a North Carolina disability determination evaluation. R. at 302–03. After the Board

denied his motion for reconsideration in August 1991, the veteran filed his brief with this Court arguing, inter alia, that the issue of entitlement to a total disability rating based on individual unemployability (TDIU) had been properly raised to the Board, but not adjudicated. (R. at 166–67). As to the TDIU issue, the Secretary agreed that "a limited remand is in order." R. at 191. The Secretary further stated:

> It appears that the BVA did not consider the issue of total disability rating based on individual unemployability (presumably on an extraschedular basis under the provisions of 38 C.F.R. § 4.16(b)), which may be deduced [from] his substantive appeal. *Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991); *see generally Mingo v. Derwinski*, [2 Vet.App. 51, 53–54 (1992)], *citing Hatlest [a]d v. Derwinski*, 1 Vet.App. 164, 169–70 (1991) (pertaining to individual unemployability).

R. at 191. On May 6, 1992, this Court held, inter alia, that "the Board erred in failing to consider the issue of a rating for total disability based upon individual unemployability under 38 C.F.R. § 4.16(b)," and accordingly granted the Secretary's motion for a remand as to that issue. *Howard v. Derwinski*, U.S. Vet.App. No. 91–326, 1992 WL 138215 (mem. dec. May 6, 1992); *see also* R. at 223–24. On October 20, 1992, the Board then further remanded the veteran's case to an RO, specifically citing this Court's May 1992 decision. R. at 234–39.

In February 1993, the veteran filed a "Statement in Support of Claim," wherein he related the following:

> As a part of my successful application for social security disability, I was evaluated by the Pitt County Mental Health Clinic for mental health problems. These problems were caused by my service-connected flat feet chronic pain. Medication was prescribed.... I have continued to receive treatment from the Pitt County Mental Health Clinic.

R. at 291. In November 1993, a VA social survey noted that the veteran had been receiving treatment for "mental problems," and concluded that "it is quite improbable that

[this] man will return to the labor force." R. at 433.

An April 1995 RO rating action granted an increased rating for the veteran's service-connected pes planus and secondary service connection for a depressive disorder, both effective November 21, 1989, which the RO stated was the date the claim was reopened. R. at 485–87. The RO decision also granted entitlement to TDIU, effective March 4, 1990, which was the day after the last day the veteran worked. *Id.*

In the BVA decision here on appeal, the Board found that Mr. Cox was entitled to attorney fees for services rendered in association with the veteran's claim for an increased rating for pes planus, but denied entitlement to attorney fees from past-due benefits awarded as to the issue of TDIU and as to the issue of secondary service connection for a depressive disorder, finding that no final BVA decision had been rendered for those claims, for which benefits were granted by the April 1995 RO decision. R. at 3–8. The Board stated:

> [I]t is evident that on no occasion did the Board of Veterans' Appeals ever promulgate a decision on the issue of entitlement to [TDIU], or a decision on the issue of entitlement to service connection for a depressive disorder as secondary to the veteran's service-connected bilateral pes planus. Moreover, because the resolution of those issues independently would not have affected the resolution of the claim that had been decided by the Board (although the reverse may not be true), they can neither be considered to have been inextricably intertwined with the issue of an increased rating for bilateral pes planus.

R. at 13. Before this Court, Mr. Cox argues that he is entitled to payment of attorney fees from the past-due benefits granted for TDIU and depression secondary to the veteran's service connected pes planus. He argues that those claims are "inextricably intertwined" with the claim for an increased rating for pes planus, specifically that "the *dates* of award of benefits [as] established on November 21, 1989[,] for pes planus and depression secondary to pes planus further confirms the existence of an inextricably in-

tertwined claim." Appellant's Brief (Br.) at 19. Mr. Cox urges the Court to reverse the August 8, 1995, BVA decision, and further, to impose sanctions on the Secretary for "inexcusable actions" amounting to "bad faith." Br. at 2, 24. In response, the Secretary first asserts that the Court does not have jurisdiction to review this matter under the "strictly limited" language of the statute. Secretary's Br. at 6–7. Alternatively, the Secretary argues that the Board decision should be affirmed as "there is no final BVA decision on the issues of service connection for a depressive neurosis or [TDIU]." Br. at 7.

## II.  ANALYSIS

### A.  Jurisdiction

■ As to the Secretary's assertion that the Court lacks jurisdiction to hear this appeal, the Court notes that this same argument was addressed in a recent case involving the same appellant. *In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 372 (1997). Therein, the Court stated the following:

The Secretary erroneously argues that, because [the U.S. Court of Appeals for the Federal Circuit's opinion in the case of *In the Matter of the Fee Agreement of Wick*, 40 F.3d 367, 371 (Fed.Cir.1994)] suggests that the Court's review of a fee agreement under [ ] 38 U.S.C. §§ 7252(a) and 7263 is limited to reviewing and ordering a reduction if the agreement is "excessive or unreasonable", ... the Court would lack jurisdiction to review a Board decision pursuant to the petitioner's claim. In this respect, *In re Wick* was concerned solely with limitations under section 7263, which states that the Court "may review" a fee agreement filed by an attorney representing an appellant before the Court. If the BVA has jurisdiction to issue a decision on the petitioner's claim for VA payment to him of the 20% fee wrongfully denied him by VA, review in this Court would be pursuant to a review of that Board decision as authorized by 38 U.S.C. § 7252(a). In such a case, the Court would not be reviewing the validity of the fee agreement (pursuant to sections 7252(a) and 7263(c ), (d))

but the validity of the Board's interpretation of the applicable law (38 U.S.C. § 5904; 38 C.F.R. § 20.609) and its reading of the facts. *See* 38 U.S.C. § 7252(a) ("Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans Appeals").

*Id.* (citations omitted). Accordingly, the Court rejects the Secretary's argument, and holds that it does have jurisdiction to review the August 1995 BVA decision. 38 U.S.C. § 7252; *see also Fee Agreement of Cox, supra.*

### B.  Entitlement to Attorney Fees

■ The question before the Court is whether there exists a final Board decision with respect to the veteran's claims of entitlement to TDIU and a depressive disorder secondary to his service-connected pes planus. Section 5904, title 38 of the United States Code reads in pertinent part:

(c)(1) Except as provided in paragraph (3), in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case. Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date. The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.

38 U.S.C. § 5904(c)(1). The regulation which interprets the statute reads in pertinent part:

(c) *Circumstances under which fees may be charged.* Except as noted ... attorneys-at-law and agents may charge claimants or appellants for their services only if all of the following conditions have been met:

(1) A final decision has been promulgated by the Board of Veterans' Appeals with respect to the issue, or issues, involved.

38 C.F.R. § 20.609(c)(1) (1997). Regarding fee agreements, this Court has held that "[a] fee agreement may be entered into between a claimant and an attorney for services provided only after the BVA makes a final decision on the issue or issues involved in the case." *In the Matter of the Fee Agreement of Smith,* 4 Vet.App. 487, 490 (1993). The Court has also held that, "while an attorney is not precluded from performing services prior to the issuance of a first final BVA decision, the attorney is precluded from charging a fee for such services." *Id.; see also In the Matter of the Fee Agreement of Stanley,* 10 Vet.App. 104 (1997) (holding "that the Secretary's promulgation of 38 C.F.R. § 20.609(c)(1) is consistent with the language and legislative history of section 5904, that it is not 'in excess of statutory jurisdiction, authority, . . . or in violation of a statutory right,' and further, that it is a valid exercise of the authority granted to the Secretary of Veterans Affairs in 38 U.S.C. § 501.").

In the case of *In the Matter of the Fee Agreement of Smith,* 10 Vet.App. 311, 314 (1997), the Court determined that "[w]here the Board fails to adjudicate a claim that was reasonably raised before it, the net outcome for the veteran amounts to a denial of the benefit sought." In that case, as in this one, the veteran's claim of entitlement to TDIU had been found by the Court to have been raised but not adjudicated, and it was therefore remanded to the Board. Following a Board remand, a VA regional office (RO) granted the veteran's entitlement to TDIU. The attorney then sought fees pursuant to 38 U.S.C. § 5904, which were denied upon a Board determination that no final BVA decision had been rendered as to the TDIU claim. On appeal to this Court, we held "as a matter of law that the Board's failure to adjudicate the TDIU claim that was properly before it constitute[d] a final adverse BVA decision with respect to that claim." *Id.* at 314.

In the instant case, the May 1992 Court remand to allow the Board to correct its error "in failing to consider the issue of a rating for total disability based upon individual unemployability" is the law of the case. *Fee Agreement of Smith, supra; see also*

*Browder v. Brown,* 5 Vet.App. 268, 270 (1993) ("Under the doctrine of 'law of the case,' questions settled on a former appeal of the same case are no longer open for review.") As in *Fee Agreement of Smith,* "the predicate for this Court's jurisdiction" was the Board's failure to decide the raised TDIU issue. 10 Vet.App. at 314. Accordingly, the Court holds that the December 1990 Board decision which failed to address the veteran's claim of entitlement to TDIU—which had been reasonably raised to it—was a final adverse decision with respect to that claim. That the veteran's ultimate entitlement to TDIU was based in part on the claim of the secondary service connection for his depressive disorder, which was not expressly before the 1990 Board, is of no moment, for the Court holds that the RO determination that the veteran was entitled to service connection for depression as of November 1989 has a plausible basis in the record. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).

■ In the April 1995 RO decision, entitlement to secondary service connection for a depressive disorder was granted, and an effective date of November 21, 1989, was assigned. *See* R. at 485–87. As to the depression claim, the RO stated the following:

> The veteran has claimed depression secondary to the service-connected foot condition. The various treatment records show treatment for an adjustment disorder and depression as well as an organic mental syndrome. At the VA psychiatric examination, the veteran gave a history of increasing difficulties with his feet. Prior to finally having to quit work, he developed feelings of stress and depression which have increased over the past two years. It was noted that he·does receive treatment at his local mental health clinic. He is on medication. He described continuing sleep disorder, feelings of fear and social isolation.

R. at 487. Generally, the effective date of an award for compensation which is based on an original claim, a reopened claim, or a claim for increase, "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application there-

for." 38 U.S.C. § 5110(a). The implementing regulation, 38 C.F.R. § 3.400, similarly states that the effective date "will be the date of receipt of the claim or the date entitlement arose, whichever is the later." Thus, because the veteran was awarded secondary service connection effective November 1989, it appears that the Secretary has concluded that the claim was before the RO at that time, and thus before the Board in December 1990 for adjudication—the necessary predicate which entitles Mr. Cox to attorney fees. *See Fee Agreement of Smith, supra.*

## III.  CONCLUSION

Upon consideration of the foregoing, the Court holds that the Board erred in concluding that there was no final BVA decision as to the issues of TDIU and depression in its denial of Mr. Cox's claim for entitlement to payment of attorney's fees. The August 8, 1995, decision of the BVA is VACATED. The matter of Mr. Cox's entitlement to attorney fees is REMANDED for action consistent with this opinion.